UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUR WORLD, LLC, | : | |
| Plaintiff, | : | |
| v. | : | Civ. Action No. |
| SMARTHEALTH, INC. and | : | 2:09-cv-00505 (JHS) |
| SMARTPRACTICE, INC., | : | |
| Defendants. | : | |

## FIRST AMENDED COMPLAINT

Plaintiff Colur World, LLC ("Colur World"), by and through its undersigned counsel,
Blank Rome LLP, hereby files this First Amended Complaint against Defendants
SmartHealth, Inc. and SmartPractice, Inc. ("Defendants") and avers the following:

## THE PARTIES

1.    Colur World, LLC is a Delaware company, with its principal place of business located
at 322 West Oak Lane, Glenolden, Pennsylvania 19036.

2.    Upon information and belief, Defendant SmartHealth, Inc. is an Arizona corporation
with its principal place of business located at 3400 E. McDowell, Phoenix, Arizona 85008.

3.    Upon information and belief, Defendant SmartPractice is an Arizona corporation, and
a division of SmartHealth, with its principal place of business located at 3400 E. McDowell,
Phoenix, Arizona 85008.

1

## JURISDICTION AND VENUE

4.     This is an action for false designation of origin, false description and false representation under federal law, unfair competition, and injury to business reputation and dilution under Pennsylvania and common law.

5.     This Court has original jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a), because this case involves trademarks and therefore arises under the laws of the United States.

6.     This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 as the claims are so related to the claims falling within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the Constitution of the United States.

7.     Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in the Eastern District of Pennsylvania, Defendants expect, or reasonably should expect, their acts to have legal consequences in the District, and because Defendants' acts have caused harm to Colur World in the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

### Plaintiff's Business and Trademarks

8.     Plaintiff Colur World is the exclusive owner of all rights, title and interest to a mark consisting of the color pink as used on gloves made of nitrile for medical and dental use (the "COLOR PINK Mark"), as well as a word mark, PINK NITRILE (the "Colur World Marks"), for use in connection with gloves made of nitrile for medical and dental use.

9.     Colur World has federally registered its COLOR PINK Mark, Registration No. 3,172,669, for "gloves for medical and dental use, made of nitrile."

2

10.    Colur World has federally registered its word mark PINK NITRILE,

Registration No. 3,170,261, for "gloves for medical and dental use, made of nitrile."

11.    Since December, 2007, Colur World has licensed the right to use the Colur World

Marks in connection with pink nitrile gloves to Top Quality Manufacturing, Inc. ("Top

Quality"), its predecessor-in-interest.

12.    Colur World and Top Quality use the COLOR PINK Mark as a source of origin and a

trademark for the color pink as placed on gloves made of nitrile for medical and dental use.

13.    Colur World, through its licensee, Top Quality, is a leading and reputable provider of

gloves for medical and dental use. Specifically, Colur World's licensee, Top Quality, is the

foremost provider of gloves made of nitrile, an organic compound which is a popular

alternative material for use by those with latex allergies and those wishing to prevent latex

allergies.

14.    Colur World and its predecessor-in-interest and licensee, Top Quality have exclusively

and continuously used the Colur World Marks in commerce since at least as early as April 26,

2005.

15.    Colur World and Top Quality have exclusively and continuously without interruption

used the Colur World Marks in connection with the distribution and sale of gloves made of

nitrile for medical and dental use. Colur World and Top Quality are the nation's only

purveyor of nitrile gloves in the color pink and marketed as "PINK" or PINK NITRILE.

16.    The United States retail price of Colur World's gloves made of nitrile bearing the

Colur World Marks typically ranges between $6.00 and $7.00 per box.

17.    Each package of nitrile gloves sold by Top Quality and displaying the Colur World

Marks, at a minimum, displays the "®" notice symbol in connection with its word mark PINK

3

NITRILE, and each package provides written notice informing purchasers that "*The COLOR PINK is a Registered Trademark of Colur World, LLC"; putting the public on actual and constructive notice of Colur World's rights in and to the registrations of the Colur World Marks. (See Exhibit A.)

18.     Colur World maintains priority rights in and to the Colur World Marks in connection with such products based upon both Colur World's and Top Quality's continuous and exclusive use of the Marks in commerce.

19.     Colur World and Top Quality have expended a substantial amount of time, energy and resources marketing, promoting, advertising and selling products under the Colur World Marks throughout the United States, including in the Commonwealth of Pennsylvania. Colur World and Top Quality's specific marketing, promoting, advertising and selling efforts and milestones in connection with the Colur World Marks include, but are not limited to, the following: advertising in leading medical and dental journals; operation of a web site, located at <www.gloveworld.net>, that annually receives many thousands of unique visitors; promoting the Colur World Marks at annual trade shows and conventions attended by tens of thousands of medical and dental professionals and purchasing executives; prominently displaying the Colur World Marks on the top surface of every 100-piece box and on each sample pack of PINK NITRILE brand gloves, as well as on the reverse-side of the box and sample packaging for each of Colur World's other brands of nitrile gloves; annually selling over a million 100-piece boxes of nitrile gloves prominently displaying the Colur World Marks; and annually earning millions of revenues from the sale of nitrile gloves prominently displaying the Colur World Marks. In 2005 alone, Colur World's advertising expenditure promoting the Colur World Marks exceeded $450,000.

4

131572.00601/11860939v.4

20.     In addition, Colur World and Top Quality adhere to high standards of quality control for all products sold under the Colur World Marks.

21.     As a result of Colur World's and Top Quality's longstanding and continuous marketing, promotion, advertisement, and sale of products under the Colur World Marks, and adherence to high standards of quality control, the Colur World Marks have met with great public and trade acceptance and have acquired trademark distinctiveness in the minds of the relevant trade and public as an indicator of source for Top Quality's provision of nitrile gloves.

22.     As a result of Colur World's and Top Quality's longstanding and continuous marketing, promotion, advertisement, and sale of products under the Colur World Marks, and adherence to high standards of quality control, the Colur World Marks have become famous in the minds of the relevant trade and public in the Commonwealth of Pennsylvania.

23.     Colur World has continuously and successfully policed and enforced the Colur World Marks to protect the rights it has built up in the Colur World Marks and to prevent any unauthorized use of the Colur World Marks by competitors.

24.     Finally, the COLOR PINK Mark is non-functional because the distinctive color pink, as used by Colur World, is not essential to the use or purpose of nitrile gloves and does not affect the cost or quality of nitrile gloves. In addition, the COLOR PINK Mark is non-functional because Colur World's exclusive use of the distinctive color pink does not put competitors at a significant non-reputation-related disadvantage.

**Defendants' Businesses and Unauthorized Use of the Mark**

25.     Defendants SmartHealth and its division, SmartPractice, are the distributors and purveyors of disposable products for medical use, including examination and surgical gloves.

5

26. On or about December 15, 2008, Colur World discovered that Defendants SmartHealth and SmartPractice were using the color pink on gloves made of nitrile, ("the Infringing Product").

27. Upon information and belief, the Infringing Product is sold by Defendants over the Internet and elsewhere for approximately $7.99 per box.

28. The Infringing Product uses features of each and every component of the Colur World Marks. Specifically the Infringing Product is the color pink for gloves made of nitrile. (See Exhibit B, images of the Infringing Product itself as well as the sides of the packaging of the Infringing Product.)

29. Colur World's counsel sent a letter dated December 23, 2008, to Defendants SmartHealth and SmartPractice, placing Defendants SmartHealth and SmartPractice on actual notice of their infringement of Colur World's intellectual property rights and instructing Defendants *inter alia* to cease and desist immediately from any further use or plans to use or register the Colur World Marks. (See Exhibit C, copy of letter dated December 23, 2008.)

30. Despite the notice, Defendants continue to offer for sale goods bearing one or more of the Colur World Marks, namely, the color pink used on nitrile gloves for medical or dental use, in an effort to trade off of Colur World's longstanding goodwill in the Colur World Marks.

31. Further, Defendants target the Infringing Product at the same consumers, or substantially the same consumers, as Colur World, namely, individuals with latex allergies or those hoping to prevent latex allergies. Defendants sell the Infringing Product at a price comparable to the prices of Colur World's nitrile gloves featuring the Colur World Marks.

6

32.    Defendants' adoption and use of the Colur World Marks violates Colur World's rights in the Colur World Marks.

33.    Defendants' adoption and use of the Colur World Marks is likely to cause confusion, mistake or deception as to the source, association, affiliation or sponsorship of the Infringing Product.  Ordinary consumers will mistakenly believe that Defendants' goods are manufactured, distributed, owned, sponsored, or approved by Colur World.

34.    Defendants' use of the Colur World Marks wrongfully implies an affiliation between Colur World and Defendants, or sponsorship by Colur World of Defendants' goods.

35.    Upon information and belief, Defendants' conduct was and is designed to trade upon the valuable goodwill and business reputation associated with the Colur World Marks.

36.    Defendants' unauthorized conduct constitutes false designation of origin, false description and false representation under federal law, and unfair competition and injury to business reputation and dilution under Pennsylvania and common law, and has caused Colur World to suffer irreparable injuries for which it has no adequate remedy at law.

37.    All such conduct by Defendants was and continues to be in bad faith, willful, deliberate and in knowing violation of the law.

38.    Colur World will be irreparably injured if Defendants' unlawful acts are allowed to continue.

39.    Defendants' actions are unlawful and have damaged Colur World in an amount not yet calculated.

7

## COUNT I

### [Violation of Lanham Act, 15 U.S.C. § 1125(a);
### False Designation of Origin, False Description and False Representation )]

40.     Colur World hereby incorporates the allegations of Paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     Colur World is the exclusive owner of the distinctive Colur World Marks as set forth hereinabove.

42.     Defendants' unauthorized use of the Colur World Marks constitutes a false designation of origin, a false or misleading description of fact, and a false or misleading representation of fact that Defendants' goods originate with, are sponsored by or approved by Colur World, or that Defendants and their goods are affiliated with, connected to, or associated with Colur World.

43.     Defendants' unlawful conduct constitutes a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

44.     As a result of Defendants' unlawful and willful acts, Colur World has suffered, and continues to suffer, substantial damages and irreparable injury, in an amount not yet calculated.

45.     Colur World has no adequate remedy at law and therefore is entitled to preliminary and permanent injunctive relief.

## COUNT II

### [Violation of Lanham Act, 15 U.S.C. § 1125(a);
### Infringement of a Common Law Mark]

46.     Colur World hereby incorporates the allegations of Paragraphs 1 through 45 of this Complaint as if fully set forth herein.

8

131572.00601/11860939v.4

47.     Colur World enjoys common law rights in the Colur World Marks throughout the United States. Its rights are superior to any rights the Defendants may claim, in any form or style, with respect to the Colur World Marks.

48.     Defendants' use of the Colur World Marks is likely to cause consumer confusion to the detriment of Plaintiff.

49.     Defendants' actions are unlawful and have damaged Colur World in an amount not yet calculated.

50.     Colur World has no adequate remedy at law and therefore is entitled to preliminary and permanent injunctive relief.

## COUNT III

### [Violation of 54 Pa. Cons. Stat. Annot. § 1124 -- Injury to Business or Reputation; Dilution]

51.     Colur World hereby incorporates the allegations of Paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52.     Defendants' use of the Colur World Marks injures Colur World's business reputation and injures and dilutes the distinctive quality of the famous Colur World Marks which hereto exclusively identified Colur World's products.

53.     Such use injures and dilutes, or tends to injure and dilute, the distinctive quality of the Colur World Marks, in violation of 54 Pa. Cons. Stat. Annot. § 1124.

54.     As a result of Defendant's unlawful and willful acts, Colur World has suffered, and continues to suffer, substantial damages and irreparable injury in an amount not yet calculated.

55.     Colur World has no adequate remedy at law and therefore is entitled to preliminary and permanent injunctive relief.

9

## COUNT IV

### [Pennsylvania Common Law Unfair Competition]

56.    Colur World hereby incorporates the allegations of Paragraphs 1 through 55 of this
Complaint as if fully set forth herein.

57.    Defendants' above-described acts constitute unfair competition under the common law
of the Commonwealth of Pennsylvania.

58.    Defendants' use of the Colur World Marks and colorable imitations thereof are likely
to cause confusion, mistake or deception among consumers as to the source, sponsorship, or
affiliation of the Infringing Product, in violation of the common law of the Commonwealth of
Pennsylvania.

59.    As a result of Defendants' unlawful and willful acts, Colur World has suffered, and
continues to suffer, substantial damages and irreparable injury in an amount not yet
calculated.

60.    Colur World has no adequate remedy at law and therefore is entitled to preliminary
and permanent injunctive relief.

### RELIEF SOUGHT

WHEREFORE, Plaintiff Colur World prays that:

A.    Judgment be entered in favor of Colur World and against Defendants as to
each of the above Counts;

B.    Defendants pay damages incurred by Colur World as a result of false
designation of origin, false description, false representation, unfair competition, injury to
business reputation, dilution, and infringement perpetrated by Defendants, including, in the

10

case of Defendants' violation of 15 U.S.C. § 1125(a), treble damages or treble profits, whichever is greater, and attorney's fees;

C.     An accounting be ordered to determine the quantities of the Infringing Product imported into and sold in the United States as well as the profits realized by Defendants due to the unauthorized use of the Colur World Marks in the sale of the Infringing Product;

D.     The Court issue a preliminary injunction restraining, enjoining and prohibiting Defendants and any of their officers, directors, agents, servants, employees, representatives, successors, assigns, attorneys, licensees, distributors and all persons in active concert or participation with Defendants be enjoined from directly or indirectly:

> i.     using the Colur World Marks or any confusingly similar designations, alone or in combination with other words, as a trademark, service mark or trade name, to identify, market, distribute, advertise, promote, to offer for sale or to provide the Infringing Product or any related goods or services;
>
> ii.     otherwise infringing or diluting the Colur World Marks; and
>
> iii.     continuing acts of false designation of origin or unfair trade practices herein complained of, or doing any acts that may cause Defendants' goods to be mistaken for, confused with or passed off as Colur World's goods.

E.     The Court issue a permanent injunction prohibiting Defendants from directly or indirectly infringing the Colur World Marks, and in any manner unfairly competing with Colur World; and from inducing, or contributing to or participating in any such acts referred to in Part D of this prayer;

11

F.     Defendants be directed to file with this Court and to serve on Colur World within ten (10) days after issuance of an injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

G.     Defendants be required to deliver up for destruction all goods, signs, packaging, literature, advertising and other materials bearing the Colur World Marks or any confusingly similar name or mark, or colorable imitation thereof, used in connection with the Infringing Product;

H.     Defendants be ordered to pay costs of this action, including attorney's fees, incurred by Colur World in connection with Defendants' infringement; and

I.     Such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims that may be tried by a jury.

Respectfully submitted,

Dated:  August 14, 2009

By:  /s/ Timothy D. Pecsenye
Timothy D. Pecsenye (TDP4786)
Dennis P. McCooe (DPM4508)
Jennifer L. Stefanski (JLS    )
BLANK ROME LLP
One Logan Square
Philadelphia, PA 19103

Telephone:  215-569-5619

Facsimile:  215-832-5619

12

# EXHIBIT A







*SilkTouch*

*VitaDerm*

*MicroDerm*

*NitraStretch*
*Blue Nitrile*

*PolyCoat*

*2ndSkin*

*NitraStretch*
*\* Pink Nitrile®*

\* Registered Trademark of Color World LLC.
All Rights Reserved.

\* The COLOR PINK is a Registered Trademark of
Color World LLC. © 2006 Color World LLC.
All Rights Reserved.

**Lot#:**  6136R08H1201

**mfg. date:**  MAY - 2008

NitraStretch™

Top Quality Mfg.
Glove World

Size:
S

Re-order No:

| XS | P900 | M | P930 |
| S | P910 | L | P940 |
| S/M | P920 | XL | P950 |

For Medical Use







*SilkTouch*

*VitaDerm*

*MicroDerm*

*NitraStretch Blue Nitrile*

*PolyCoat*

*2ndSkin*

*NitraStretch *Pink Nitrile®*

\* Registered Trademark of Colur World LLC, All Rights Reserved.

\* The COLOR PINK (applied to a Nitrile Glove) is a Registered Trademark of Colur World LLC © 2006 All Rights Reserved.

Lot#:   6136R08E903

mfg. date:   MAY - 2008







EXHIBIT B



PinkRibbon

*gloves of hope*

POWDER FREE NITRILE EXAM GLOVES

LATEX FREE

SmartPractice

medical grade • 100 gloves by weight
for single use

LATEX FREE

Pink Ribbon
*gloves of hope*
POWDER FREE NITRILE EXAM GLOVES

☐ XS (43312)
■ S (43313)
☐ M (43314)
100 gloves by weight

SmartPractice

Pink Ribbon
*gloves of hope*

POWDER FREE NITRILE EXAM GLOVES
medical grade   100 gloves by weight   for single use

Caution: Powder free gloves contain no more than 2mg of powder per glove.
Medical grade index gloves are not intended for use as a chemical barrier.
Other components used in making these gloves may also cause allergic
reactions in some users.

Reorder:
**800.800.4939**
smartpractice.com

PinkRibbon
*gloves of hope*

POWDER FREE NITRILE EXAM GLOVES

LATEX FREE

SmartPractice

medical grade • 100 gloves by weight
for single use

Thank You! Your purchase of Pink Ribbon gloves supports breast cancer research. For each case of Pink Ribbon gloves sold, Smart Practice will donate 5% of Profits to fund breast cancer research. As advancements in research develop more effective treatments and higher awareness leads to earlier detection, breast cancer survival rates continue to rise! Your hands will feel great wearing these gloves—and you'll be making a difference in women's lives, one glove at a time.

*Beth K. Hamann DDS*

Beth Hamann, DDS
Vice President, SmartPractice

Caution: Powder free gloves contain no more than $2n_{\text{g}}$ of powder per glove. Medical grade exam gloves provide an excellent biological barrier. They are not intended for use as a chemical barrier.
Other components used in making these gloves may also cause allergic reactions in some users.



# SmartPractice®

**LOT**  807430 0938

**Date of Manufacture**  2008-07  714583

**SHIPMENT #:**

Manufactured for
SmartPractice® Inc.
3400 East McDowell
Phoenix AZ 85008-7899
Made in Indonesia

In storage AVOID excessive heat (40°C, 104°F). Open box should be shielded from exposure to direct sun or fluorescent lighting.

71355, 0408 © 2008 SmartPractice. All rights reserved.
VC.P42



# EXHIBIT C



**BLANK ROME** LLP
COUNSELORS AT LAW

Phone:   (215) 569-5619
Fax:     (215) 583-5619
Email:   pecsenye@blankrome.com

December 23, 2008

**VIA FEDERAL EXPRESS®**

Mr. Curt Hamann
Owner
SmartHealth, Inc., and
SmartPractice, Inc.
3400 East Mcdowell Rd
Phoenix, AZ  85008-7899

        Re:   SmartHealth, Inc. and SmartPractice, Inc.'s
              Infringement of Colur World, LLC's TradeMarks
              PINK NITRILE® and [COLOR PINK]®

Dear Mr. Hamann:

        This firm represents Colur World, LLC (hereinafter, "Colur
World") and has been consulted by Colur World in connection with
SmartHealth, Inc.'s, d/b/a SmartPractice, (hereinafter Smart
Practice) unauthorized use and offer for sale of pink nitrile
exam gloves, sold under a PINK RIBBON mark, in violation of
Colur World's rights in and to its registered trademarks [COLOR
PINK]® and PINK NITRILE® for "gloves for medical and dental use,
made of nitrile" (the "Colur World Marks"). Further, Colur
World is the exclusive owner of federal registrations for the
Colur World Marks, namely, U.S. Registration Nos. 3,172,669 and
3,170,261, and has maintained priority rights in the Colur World
Marks in connection with the aforementioned goods since at least
as early as April 26, 2005. As a result of Colur World's
extensive use of the Colur World Marks, the marks have acquired
significant goodwill in the trade.

        It has come to our attention that Smart Practice may be
selling nitrile exam gloves in the color pink, in direct
violation of Colur World's established trademark rights in its
Colur World Marks. In addition, we believe that the supply
company engaged by Smart Practice to manufacture its nitrile
gloves, PT. Medisafe Technologies, an Indonesian company, may be
in violation of its 510(k) premarket notification through sales

120240.00102/11851034v.1
Delaware   •   Florida   •   New Jersey   •   New York   •   Ohio   •   Pennsylvania   •   Washington, DC   •   Hong Kong



Mr. Curt Hamann
December 23, 2008
Page 2

of nitrile gloves to the United States, as its notification was issued for *chloroprene* exam gloves in the color pink.

Be advised that the sale of pink nitrile gloves by Smart Practice mark is in direct violation of Colur World's rights in its Colur World Marks, and likely to cause consumer confusion as to the source or sponsorship of Smart Practice's goods, as Colur World has exclusive rights to the sale of pink nitrile gloves in the United States. The use by Smart Practice of the color pink on nitrile gloves also implies an affiliation between Colur World and Smart Practice, or sponsorship of Smart Practice by Colur World. Additionally, to the extent that your supplier has not complied with or obtained a 510(k) notification from the FDA for the sale of pink nitrile gloves in the United States, you may be in violation of the Federal Food, Drug and Cosmetic Act. Please be assured that all legal remedies available to safeguard the Colur World Marks from trademark infringement and wrongful appropriation will be pursued, including, but not limited to, seeking treble damages.

We have advised our client of the range of legal remedies available to protect its very valuable intellectual property from infringement, wrongful appropriation, unfair competition, and dilution. Colur World regards Smart Practice's use or sale of pink nitrile exam gloves under its PINK RIBBON mark as a very serious matter and it will take appropriate steps to protect its rights. On behalf of Colur World, we hereby make formal demand that Smart Practice:

    (1)   cease and desist immediately from any further use or
          plans to use the color pink in connection with exam
          gloves made of nitrile, as well as the use of any
          other color, mark, name or source identifier which is
          confusingly similar to the Colur World Marks;

    (2)   provide written assurances by no later than
          January 2, 2009, that it will refrain from all such
          use and future use or registration;

    (3)   provide an accounting, including quantities and dollar
          amounts, for all products sold, in stock, or currently
          in transit, using the color pink in connection with
          exam gloves made of nitrile;



**BLANK ROME** LLP
COUNSELORS AT LAW

Mr. Curt Hamann
December 23, 2008
Page 3

> (4)  contact us to discuss the recall and recapture of all
>      printed, online and broadcasted promotional materials
>      used or distributed by Smart Practice, whether in hard
>      copy or electronic format, used in relation to pink
>      nitrile exam gloves, and to discuss corrective
>      advertising.

We look forward to a response from Smart Practice by
January 2, 2009, concerning these matters.

Sincerely yours,

TIMOTHY D. PECSENYE

# EXHIBIT D



**BLANK  ROME** LLP
COUNSELORS AT LAW

Phone:   (215) 569-5619
Fax:     (215) 583-5619
Email:   pecsenye@blankrome.com

January 23, 2009

**VIA FEDERAL EXPRESS® AND**
**FACSIMILE (62) 613-000-7133**

Mr. Anil Taneja
PT. Medisafe Technologies
Jl. Batang Kuis Gg. Tambak Rejo / PSR IX
Desa Bunta Bedimbar, Tanjung Morawa
Medan, Sumatera Utara
Indonesia

> Re:  PT. Medisafe Technologies'
>      Infringement of Colur World, LLC's United States
>      TradeMarks PINK NITRILE® and [COLOR PINK]®

Dear Mr. Taneja:

This firm represents Colur World, LLC (hereinafter, "Colur World") and has been consulted by Colur World in connection with PT. Medisafe Technologies' (hereinafter PT. Medisafe) unauthorized use, distribution, sale, and offer for sale of pink nitrile exam gloves in the United States in violation of Colur World's rights in and to its registered trademarks [COLOR PINK]® and PINK NITRILE® for "gloves for medical and dental use, made of nitrile" (the "Colur World Marks"). Further, Colur World is the exclusive owner of federal registrations for the Colur World Marks, namely, U.S. Registration Nos. 3,172,669 and 3,170,261, and has maintained priority rights in the Colur World Marks in connection with the aforementioned goods since at least as early as April 26, 2005. As a result of Colur World's extensive use of the Colur World Marks, the marks have acquired significant goodwill in the trade.

It has come to our attention that PT. Medisafe is selling nitrile exam gloves in the color pink through Medisafe Technologies (Michigan) and SmartHealth, Inc., in direct violation of Colur World's established trademark rights in its Colur World Marks here in the United States. In addition, we believe that you may be in direct violation of your 510(k) premarket notification through sales of nitrile gloves in the



BLANK ROME llp
COUNSELORS AT LAW

Mr. Anil Taneja
January 23, 2009
Page 2

United States, as we are unable to location such documentation at this time.

Be advised that the sale and distribution of pink nitrile gloves by PT. Medisafe in the United States is in direct violation of Colur World's rights in its Colur World Marks, and likely to cause consumer confusion as to the source or sponsorship of PT. Medisafe's goods, as Colur World has exclusive rights to the sale of pink nitrile gloves in the United States. The use by PT. Medisafe of the color pink on nitrile gloves also implies an affiliation between Colur World and PT. Medisafe, or sponsorship of PT. Medisafe by Colur World. Additionally, to the extent that you have not complied with or obtained a 510(k) notification from the FDA for the sale of pink nitrile gloves in the United States, you may be in violation of the Federal Food, Drug and Cosmetic Act. Please be assured that all legal remedies available to safeguard the Colur World Marks from trademark infringement and wrongful appropriation will be pursued, including, but not limited to, seeking treble damages.

We have advised our client of the range of legal remedies available to protect its very valuable intellectual property from infringement, wrongful appropriation, unfair competition, and dilution. Colur World regards PT. Medisafe's use or sale of pink nitrile exam gloves in the United States as a very serious matter and it will take appropriate steps to protect its rights. On behalf of Colur World, we hereby make formal demand that PT. Medisafe:

    (1)    cease and desist immediately from any further use or plans to use in the United States the color pink in connection with exam gloves made of nitrile, as well as the use of any other color, mark, name or source identifier which is confusingly similar to the Colur World Marks;

    (2)    provide written assurances by no later than February 2, 2009, that it will refrain from all such use and future use or registration in the United States;

    (3)    provide an accounting, including quantities and dollar amounts, for all products sold, in stock, or currently



**BLANK ROME** LLP
COUNSELORS AT LAW

Mr. Anil Taneja
January 23, 2009
Page 3

in transit, using the color pink in connection with exam gloves made of nitrile in the United States; and

(4)  contact us to discuss the recall and recapture of all printed, online and broadcasted promotional materials used or distributed by PT. Medisafe in the United States, whether in hard copy or electronic format, used in relation to pink nitrile exam gloves, and to discuss corrective advertising.

We look forward to a response from PT. Medisafe by February 2, 2009, concerning these matters.

Sincerely yours,

TIMOTHY D. PECSENYE