IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| COLUR WORLD, LLC, | : | CIVIL NO. |
| | : | |
| Plaintiff, | : | 09-00505 |
| | : | |
| v. | : | |
| | : | |
| SMARTHEALTH, INC. et al., | : | |
| | : | |
| Defendants. | : | |

**OPINION AND ORDER**

**Slomsky, J.**                                                                                                         **January 25, 2010**

## I.        INTRODUCTION

On February 4, 2009, Plaintiff, Colur World, LLC, commenced this trademark action

against Defendants SmartHealth, Inc. and SmartPractice, Inc.  Defendants moved to dismiss the

complaint and, after hearing oral argument on the motion to dismiss, the Court granted Plaintiff

leave to file an amended complaint.  (Doc. No. 20.)  On August 21, 2009, Plaintiff filed its First

Amended Complaint.  (Doc. No. 22.)  Count One alleges a claim for false designation of origin,

false description, and false representation under the Lanham Act, 15 U.S.C. § 1125(a), also

known as § 43(a) of the Lanham Act.  Count Two alleges a claim for infringement of a common

law mark, under the same section of the Lanham Act, 15 U.S.C. § 1125(a).  Count Three alleges

a violation of Pennsylvania's anti-dilution statute, 54 Pa. C.S.A. § 1124.  Count Four alleges a

Pennsylvania common law unfair competition claim.

Currently before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended

Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and Local Rule 7.1 (Doc. No.

24.). Plaintiff filed a response in Opposition to Defendants' Motion to Dismiss (Doc. No. 25),

and Defendants filed a Reply in Support of their Motion to Dismiss (Doc. No. 26).

For the reasons set forth below, Defendants' Motion to Dismiss (Doc. No. 24) will be denied in

its entirety.

## II.     FACTUAL BACKGROUND

Plaintiff and Defendants market and sell nitrile[1] gloves for medical use. The target

consumers for nitrile gloves are substantially the same for Plaintiff and Defendants. (Id. ¶ 31.)

Plaintiff has two trademarks (the "Colur World Marks") for its product-line of pink nitrile gloves

which are registered on the Supplemental Register of the United States Patent and Trademark

Office ("U.S.P.T.O.").[2] (Pl.'s Opposition to Def.'s Mot. to Dismiss 4.) The first mark consists

of the color pink which is used on Plaintiff's nitrile gloves (the "COLOR PINK Mark")

(Registration No. 3,172,669). (First Amended Compl. ¶ 9.) The second is a word mark, "PINK

---

[1] Nitrile is an organic compound that is used instead of latex in medical gloves. Some patients have an allergic reaction to latex. Nitrile gloves do not set off an allergic reaction. (First Amend. Compl. ¶ 13.)

[2] In addition to the Principal Register, the U.S.P.T.O. maintains a Supplemental Register for the protection of trademarks. See 15 U.S.C. § 1091. According to the USPTO, the Supplemental Register:

> [A]llows for registration of certain marks that are not eligible for
> registration on the Principal Register, but are capable of
> distinguishing an applicant's goods or services. Marks registered on
> the Supplemental Register receive protection from conflicting marks
> and other protections, but are excluded from receiving the advantages
> of certain sections of the [Lanham Act].

United States Patent and Trademark Office, Glossary, www.uspto.gov/main/glossary/index.html (last modified Apr. 23, 2009). The statutory protections that do not apply to trademarks registered on the Supplemental Register are listed in 15 U.S.C. § 1094.

NITRILE," which is used in marketing and packaging Plaintiff's gloves (Registration No. 3,170,261).  (Id. ¶ 10.)

Plaintiff alleges that its COLOR PINK Mark is a source of origin and a trademark for the color pink used on its nitrile gloves.  (Id. ¶ 12.)  Plaintiff also alleges that it is "the nation's only purveyor of nitrile gloves in the color pink and marketed as 'PINK' or PINK NITRILE." (Id. ¶ 15.)  Plaintiff's packaging displays the "®" notice symbol in connection with its PINK NITRILE word mark, and each package provides written notice that "*The COLOR PINK is a Registered Trademark of Colur World, LLC." (Id. ¶ 17.)  These marks are displayed on the top and reverse side of every box and sample pack of Plaintiff's Pink Nitrile brand gloves, as well as on the reverse side of the box and sample packaging for each of Plaintiff's other brands of nitrile gloves. (Id. ¶ 19.)

Through the use of the two Colur World Marks, Plaintiff advertises its Pink Nitrile brand gloves in medical and dental journals, on its web site (which annually receives thousands of unique visitors), and at annual trade shows.  (Id.)  In 2005, Plaintiff spent over $ 450,000 for advertisements promoting the Colur World Marks. (Id.)  Plaintiff has exclusively and continuously marketed, promoted, advertised, and sold its products using the Colur World Marks since April 26, 2005.  (Id. ¶¶ 14, 22.)  Annually, Plaintiff sells more than one million 100-piece boxes of nitrile gloves displaying the Colur World Marks, earning millions in revenue from these sales.  (Id. ¶ 19.)

In December 2008, Plaintiff discovered that Defendants were using the color pink on their nitrile gloves.  (Id. ¶ 26.)  Defendants' packing also displays the phrases "Pink Ribbon Gloves of Hope" and "Powder Free Nitrile Exam Gloves."  (Id. at Ex. B.)   After this discovery,

3

Plaintiff's Counsel sent written notification to Defendants that their product was infringing upon the registered Colur World Marks, and instructed Defendants to cease and desist from any further use of Plaintiff's marks. (Id. ¶ 29.) Despite this notice, Defendants have continued to market and sell the allegedly infringing pink nitrile gloves. (Id. ¶ 30.)

## III. MOTION TO DISMISS STANDARD

Defendants have moved to dismiss all claims against them for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under a reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (reasoning that this statement of the Rule 12(b)(6) standard remains acceptable following the U.S. Supreme Court's decision in Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007) (internal quotations omitted)).

To withstand a motion to dismiss under Rule 12(b)(6), "factual allegations must be enough to raise a right to relief above the speculative level." Phillips, 515 F.3d at 234. When a complaint contains well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009) (reaffirming the rationale set forth in Twombly). However, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1949. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Id.

**IV.     DISCUSSION**

Defendants argue that Counts One and Two of Plaintiff's First Amended Complaint,

alleging violations of Section 43(a) of the Lanham Act should be dismissed because Plaintiff has

not plead sufficient facts to establish certain elements of the Lanham Act claims, including that

its use of the color pink is not functional, and that there is a likelihood of confusion.

Defendants further argue that Count Four, alleging common law unfair competition, should fail

for the same reasons the Lanham Act claims fail under Counts One and Two.  Finally,

Defendants argue that Count Three, alleging statutory dilution, fails to state a claim because

Plaintiff has not alleged facts showing that its marks are distinctive or that there is any incident or

report of actual dilution.

**A.       The Lanham Act and Common Law Unfair Competition Claims[3]**

In this case, Plaintiff seeks to protect two marks it has registered on the Supplemental

Register.  The first mark, a word mark, refers to the words "Pink Nitrile" on Plaintiff's packaging

which contains the pink colored gloves made of nitrile.  The second mark, the COLOR PINK

Mark, refers to Plaintiff's use of the color pink as the sole color of its pink nitrile gloves.

In Count One, Plaintiff alleges that the unauthorized use of the two Colur World Marks

by Defendants constitutes a false designation of origin, false description, and false representation

under the Lanham Act, 15 U.S.C. § 1125(a).  In Count Two, Plaintiff alleges infringement of a

---

[3] A claim of common law unfair competition in Pennsylvania is essentially identical to a federal claim under the Lanham Act.  Liko AB v. Rise Lifts Inc., 625 F. Supp.2d 250, 255 (E.D. Pa. 2008); Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc., 94 F. Supp. 2d 566, 580-81 (E.D. Pa. 1999); see also Fisons Horticulture v. Vigoro Indus., 30 F.3d 466, 481 (3d Cir. 1994). Therefore, the analysis will be the same for the Lanham Act claims (Counts One and Two) and for the common law unfair competition claim (Count Four).

common law mark under the same Lanham Act section, 15 U.S.C. § 1125(a).[4]  Therefore, the

same elements apply to Counts One and Two and sufficient facts must be alleged in both counts

to defeat a Motion to Dismiss.  See A&H Sportswear, Inc. v. Victoria Secret Stores, Inc., 237

F.3d 198, 210 (3d Cir. 2000).

> Section 1125(a) provides, *inter alia*, that:

>> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which–

>>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .

>> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

> To properly state a Lanham Act claim under this section and also a common law unfair

competition claim, Plaintiff must plead facts demonstrating (1) the existence of a valid and

---

[4] The Lanham Act prohibits the use in commerce, without consent, of registered trademarks in a way that is likely to cause confusion with regard to the sale, distribution, or advertising of goods.  15 U.S.C. § 1114.  In addition, courts have recognized that the Act protects unregistered marks, i.e., common law marks, which includes marks only registered on the Supplemental Register, under 15 U.S.C. § 1125(a).  See Time, Inc. v. Petersen Publishing Co., 173 F.3d 113, 117 (2d Cir. 1999).  To prevail on a trademark claim under either infringement of a federally registered service mark (15 U.S.C. § 1114) or infringement of a common law mark (15 U.S.C. § 1125(a)), a plaintiff must prove the same elements.  Time Inc., 173 F.3d at 117; Juicy Couture, Inc. v. L'Oreal USA, Inc., 2006 WL 1012939, at *17 (S.D.N.Y Apr. 19, 2006) (same); Commerce Bancorp, Inc. v. BankAtlantic, 285 F. Supp.2d 475, 481-83 (D. N.J. 2003) (same).

protectable mark, (2) ownership of the mark, and (3) that Defendants' use of the mark causes a

likelihood of confusion as to origin, source, or affiliation.  15 U.S.C. § 1125(a); A&H

Sportswear, 237 F.3d at 210.

When a mark is not registered on the Principal Register,[5] as in the case here, to establish

validity and protectability, Plaintiff must show that the mark it seeks to protect is inherently

distinctive or that it has developed secondary meaning.[6]  Commerce Nat'l, 214 F.3d at 438.  In

addition, when the mark is a product feature (e.g., shape, design, smell, or color), as opposed to a

word mark, to establish validity and protectability, Plaintiff must also demonstrate that the mark

is not functional.  Qualitex, 514 U.S. at 164.

The so-called functionality doctrine of trademark law prevents manufacturers from

controlling useful product features.  Id.  The Supreme Court has explained that a functional

---

[5]  Generally, when a mark is federally registered on the U.S.P.T.O. Principal Register and it has become incontestible, then the ownership, validity, and protectability of the mark are established.  Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc., 214 F.3d 432, 438 (3d Cir. 2000).  A mark becomes incontestable after the registrant "files affidavits stating that the mark has been registered, and that it has been in continuous use for five consecutive years subsequent to registration.  In addition, the owner must show that there is no proceeding contesting the owner's rights to registration, and that there has been no adverse decision regarding the registrant's ownership or right to registration."  Commerce Bancorp, 285 F. Supp.2d at 484 n.5.  In this case, Plaintiff has not registered the Colur World Marks on the Principal Register and it does not contend that the marks are incontestable.

[6] One of the fundamental objectives of trademark law is to prevent others from copying a source-identifying mark.  Qualitex Co. v. Jacobson Products Co., 514 U.S. 159, 163-64 (1995). A mark may be source-identifying if it is inherently distinctive or if it has developed secondary meaning.  Id. at 163.  Inherently distinctive marks (e.g., "Kodak" or "Pepsi") are generally "arbitrary," "fanciful," or "suggestive" words or designs that almost immediately signal a brand or product source.  Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210-12 (2000). Alternatively, marks that may appear merely descriptive, e.g., "'Trim' on nail clippers or 'Car-Freshner' on deodorizer [] can come to indicate a product's origin."  Qualitex, 514 U.S. at 163. Although such marks may not be inherently distinctive, they are said to have acquired a secondary meaning in the minds of the consuming public.  Id.

feature is something that is:

> "[E]ssential to the use or purpose of the article or [that] affects the cost or quality of the article," that is, [] exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.

Id. at 165 (quoting Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 850 (1982)); see also

TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 30 (2001) (a plaintiff may show

that a feature is not functional "by showing that it is merely an ornamental, incidental, or

arbitrary aspect of the device").

### 1.    The COLOR PINK Mark

Defendants' Motion to Dismiss Plaintiff's Lanham Act and common law unfair

competition claims regarding the COLOR PINK Mark alleges that Plaintiff has not demonstrated

that the COLOR PINK Mark is a valid and protectable mark, because Plaintiff has not alleged

facts demonstrating that the color pink feature of Plaintiff's gloves is non-functional.

More than a decade has passed since the United States Supreme Court held that there is

no rule barring the use of  color alone as a trademark.  Qualitex, 514 U.S. at 161-62.  The

Qualitex case was brought by the manufacturer (Qualitex Company) of pads used on dry cleaning

presses.  Qualitex Company used a special shade of green-gold color on its pads, and had used

this color for approximately thirty years before a competitor began selling press pads using a

similar color.  Qualitex brought suit for unfair competition against its competitor under the

Lanham Act, 15 U.S.C. § 1125(a).  During the pendency of the suit, Qualitex successfully

registered the green-gold color on its press pads with the U.S.P.T.O. as a trademark and added a

claim for trademark infringement under 15 U.S.C. § 1114(1).  The issue on appeal before the

Supreme Court was whether the Lanham Act permits the registration of a trademark "that

consists, purely and simply, of a color." Id. at 160-61. The Court held that a color, under certain

circumstances, may serve as a trademark, and added the proviso that, like any other trademark,

the color must not be a "functional" feature of the product. Id. at 165.

In this case, Plaintiff must plead facts which demonstrate that the color pink is not a

functional feature of nitrile gloves for medical and dental use. The color pink is a functional

feature if it is essential to the use, purpose, cost, or quality of the gloves, or if it would hinder

competition by creating a significant non-reputation-related disadvantage. Id. As stated by the

Supreme Court in Qualitex:

> [W]here a color serves a significant nontrademark function - whether
> to distinguish a heart pill from a digestive medicine or to satisfy the
> "noble instinct for giving the right touch of beauty to common and
> necessary things," . . . courts will examine whether its use as a mark
> would permit one competitor (or group) to interfere with legitimate
> (nontrademark-related) competition through actual or potential
> exclusive use of an important product ingredient.

514 U.S. at 170 (citation omitted).

Defendants claim that Plaintiff has failed to plead non-functionality. This claim arises

from Plaintiff's statement in the First Amended Complaint that:

> [T]he COLOR PINK Mark is non-functional because the distinctive
> color pink, as used by Colur World, is not essential to the use or
> purpose of nitrile gloves and does not affect the cost or quality of
> nitrile gloves. In addition . . . Colur World's exclusive use of the
> distinctive color pink does not put competitors at a significant non-
> reputation-related disadvantage.

(First Amend. Compl. ¶ 24.) Defendants argue that this paragraph largely tracks the language

setting forth the standard for non-functionality under Qualitex, and is therefore merely a

9

conclusory list of allegations, not facts.  The Court, however, is not persuaded by Defendants'

arguments regarding the COLOR PINK Mark.

First, contrary to Defendants' argument, the assertions contained above in paragraph

twenty-four (24) of Plaintiff's First Amended Complaint are not legal conclusions.   Rather,

these are factual assertions, which if taken as true, along with the additional facts alleged in the

First Amended Complaint, plausibly describe the non-functionality of the color pink as used on

nitrile gloves.  See Qualitex, 514 U.S. at 165 ("this latter fact – the fact that sometimes color is

not essential . . . and does not affect cost or quality – indicates that the doctrine of 'functionality'

does not create an absolute bar to the use of color alone as a mark.") (emphasis added).

Second, apart from paragraph twenty-four (24), Plaintiff has plead additional facts which

plausibly support its argument that the color pink is a non-functional feature of its nitrile gloves.

In particular, Plaintiff has alleged that it is the nation's only purveyor of medical gloves made of

nitrile in the color pink and marketed as "PINK" or "PINK NITRILE."  Plaintiff has also

attached to its First Amended Complaint exhibits showing that it sells nitrile medical gloves in

the color blue (the color blue is not a registered trademark).[7]  (First Amend. Compl. ¶ 15, Ex. A.)

These facts, taken as true, lend support to Plaintiff's assertion that the color pink is not essential

to the use or purpose of nitrile medical gloves.  If other purveyors of nitrile medical gloves,

including Plaintiff, successfully market and sell medical gloves made of nitrile in colors other

than pink, then, according to Plaintiff, it is at least plausible that (1) the color pink is not an

essential feature of nitrile medical gloves, and (2) protection of the color pink as used on nitrile

---

[7] When deciding a motion to dismiss, "courts generally consider only the allegations
contained in the complaint, exhibits attached to the complaint and matters of public record."
Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

medical gloves would not hinder competition by creating a significant non-reputation-related disadvantage.

Under these circumstances, the Court finds that Plaintiff has plead sufficient facts to state a plausible claim for relief, even if it has only done so by just barely "nudg[ing] [its] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. If Plaintiff's assertions regarding non-functionality are disproved or unsupported by facts borne out through discovery, Defendants may succeed at the summary judgment stage. However, in view of the information set forth in the First Amended Complaint, raising this argument at the motion to dismiss stage is misplaced. Whether use of the color pink affects the cost or quality of nitrile gloves or engenders some other essential aesthetic value, which undermines a claim of non-functionality, are all questions of fact that may be explored in ensuing discovery in accordance with the Federal Rules of Civil Procedure.

Plaintiff has alleged facts on the matter of functionality that rise above the speculative level. They are more than mere conclusory statements. Accordingly, Defendants' Motion to Dismiss Plaintiff's Lanham Act and common law unfair competition claims in Counts One, Two, and Four regarding the COLOR PINK Mark will be denied.

### 2.     The PINK NITRILE Word Mark

Defendants have also moved to dismiss Plaintiff's Lanham Act (Counts One and Two) and common law unfair competition (Count Four) claims as to the PINK NITRILE word mark. Defendants assert that Plaintiff has not adequately plead these claims regarding the PINK NITRILE word mark, because the facts alleged in the First Amended Complaint do not support a plausible likelihood of confusion between Plaintiff's and Defendants' product.

11

As already noted, the third element of a Lanham Act Claim under 15 U.S.C. § 1125(a), requires a showing that Defendants' use of Plaintiff's mark causes a likelihood of confusion as to origin, source, or affiliation. A&H Sportswear, 237 F.3d at 210. A likelihood of confusion exists when "consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." Dranoff-Perlstein Assocs. v. Sklar, 967 F.2d 852, 862 (3d Cir. 1992). The question of likelihood of confusion is ultimately one of fact. A&H Sportswear, 237 F.3d at 237.

In Interpeace Corp. v. Lapp, Inc., the Third Circuit developed a non-exhaustive list of factors a court may consider in determining whether there is a likelihood of confusion between marks – now commonly referred to as the Lapp factors. 721 F.2d 460 (3d Cir. 1983). The Lapp factors include: the degree of similarity between the marks, the strength of the owner's mark, the price of the goods, the length of time Defendants have used the mark without evidence of actual confusion arising, the intent of Defendants in adopting the mark, evidence of actual confusion, whether the goods are marketed through the same channels and media, the extent to which the targets of the parties' sales efforts are the same, and the relationship of the goods in the minds of consumers because of the similarity of function. A&H Sportswear, Inc., 237 F.3d at 211.

Plaintiff has alleged in the First Amended Complaint that Defendants: (1) use the color pink on their nitrile gloves; (2) market the gloves in packaging identifying the gloves as "pink" and made of "nitrile;" (3) target the same consumers; (4) sell their gloves at a comparable price; and (7) intentionally trade upon the valuable goodwill and business reputation associated with Plaintiff's marks. (First Amend. Compl. ¶¶ 26-31, 34; Ex. A-B.) Plaintiff also provides factual allegations supporting the strength of its own marks and their alleged distinctiveness in the minds

12

of the public. (See First Amend. Compl. ¶¶ 14, 15, 19, 21-23.) The allegations noted above are enough to satisfy the Court that, if true, there exists a plausible likelihood of consumer confusion regarding both Plaintiff's PINK NITRILE word mark and its COLOR PINK Mark.[8]

Defendants' argument that its product and packaging do not confuse customers as to the source or origin of the product may prove true during the course of discovery. However, this argument at the motion to dismiss stage is not persuasive. Plaintiff has alleged facts to plausibly support a likelihood of confusion. As such, Defendants' Motion to Dismiss Counts One, Two, and Four regarding the PINK NITRILE word mark will be denied.

## B. The Statutory Dilution Claim

Finally, Defendants seek dismissal of Count Three, Plaintiff's state law statutory dilution claim under 54 Pa. C.S.A. § 1124. Pennsylvania's anti-dilution statute states:

> The owner of a mark which is famous in this Commonwealth shall be
> entitled . . . to an injunction against another person's commercial use
> of a mark or trade name if such use begins after the mark has become
> famous and causes dilution of the distinctive quality of the mark and
> to obtain such other relief as is provided in this section.

54 Pa. C.S.A. § 1124.

To successfully state a statutory dilution claim under Pennsylvania law, Plaintiff must plead that (1) Plaintiff owns a famous mark that is distinctive, inherently or through acquired distinctiveness; (2) Defendants make commercial use of a mark or trade name; (3) Defendants' use of the mark began after Plaintiff's mark became famous; and (4) Defendants' use causes

---

[8] Although not disputed by Defendants in their Motion, the allegations in the First Amended Complaint regarding confusion over the COLOR PINK Mark satisfy, at this stage, the third element of a Lanham Act claim and for this additional reason Counts One and Two will not be dismissed.

actual dilution. 54 Pa. C.S.A. § 1124; <u>Pennzoil-Quaker State Co. v. Smith</u>, 2008 WL 4107159, at *23 (W.D. Pa. Sept. 2, 2008); <u>Scott Fetzer Co. v. Gehring</u>, 288 F. Supp.2d 696, 702 (E.D. Pa. 2003).

Defendants urge dismissal of Count Three because Plaintiff has failed to plead facts supporting the first and fourth elements of a Pennsylvania dilution claim. Because the Court disagrees, Defendants' Motion to Dismiss Count Three will be denied.

Plaintiff's First Amended Complaint alleges that Plaintiff's marks have "met with great public and trade acceptance and have acquired trademark distinctiveness in the minds of the relevant trade and public as an indicator of source" for their nitrile gloves. (First Amend. Compl. ¶ 21.) Plaintiff also alleges that its marks "have become famous in the minds of the relevant trade and public in the Commonwealth of Pennsylvania." (First Amend. Compl. ¶ 22.) In support of these allegations, Plaintiff states that its marks have acquired trademark distinctiveness through advertisements in leading medical and dental journals; through promotions at annual trade shows attended by medical and dental professionals; by annually earning millions in revenue from the sale of nitrile gloves prominently displaying the Colur World Marks; and through annual advertising expenditures in excess of $ 450,000. (First Amend. Compl. ¶ 19.) These allegations are sufficient to properly support the "distinctiveness" element of a dilution claim.

The fourth element of a dilution claim requires Plaintiff to plead facts demonstrating that Defendants have caused actual dilution. Dilution means "the lessening of the capacity of a famous mark to identify and distinguish goods or services. . . . [T]hat does not mean that the consequences of dilution, such as actual loss of sales or profits, must also be proved." <u>Scott</u>

Fetzer Co., 288 F. Supp.2d at 702 (quoting Moseley v. Victoria Secret Catalogue, Inc., 537 U.S. 418, 432 (2003)).

In this case, Plaintiff has plead that due to Defendants' use of the allegedly infringing marks, Defendants have wrongfully implied an affiliation between Plaintiff and Defendants, and that Defendants' conduct was designed to trade upon Plaintiff's goodwill and business reputation, which caused irreparable injury. (First Amend. Compl. ¶¶ 34-36.) These allegations demonstrate a lessening of the capacity of Plaintiff's marks to identify and distinguish its gloves from Defendants' gloves, and demonstrate a plausible claim of actual dilution.

Accepting the above-mentioned facts as true, as the Court must do in deciding a Motion to Dismiss, Plaintiff has plausibly stated a claim for relief under the Pennsylvania anti-dilution statute. Therefore, Defendants' Motion to Dismiss Count Three will be denied.

## V. CONCLUSION

Defendants' Motion to Dismiss asks this Court to make findings on contested facts and weigh evidence at this stage of the proceedings. Defendants' arguments would be more appropriate at the summary judgment stage, where, through affidavits and other discovery, Plaintiff's factual allegations may be properly challenged. Accordingly, Defendants' Motion to Dismiss will be denied in its entirety. An appropriate Order follows.